**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ANTHONY J. ARRUDA,
                                    Plaintiff,

   v.                                                       No. 03-CV-815
                                                            (DNH/DRH)

JO ANNE B. BARNHART, Commissioner of
Social Security,
                                    Defendant.

---

**APPEARANCES:**                                  **OF COUNSEL:**

CONBOY, McKAY, BACHMAN            LAWRENCE D. HASSELER, ESQ.
  & KENDALL, LLP
Attorney for Plaintiff
407 Sherman Street
Watertown, New York 13601

HON. GLENN T. SUDDABY               WILLIAM H. PEASE, ESQ.
United States Attorney for the           Assistant United States Attorney
 Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff Anthony J. Arruda ("Arruda") brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for benefits under the Social Security Act. Arruda moves for a finding of disability and the Commissioner cross-moves for a judgment on the

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

pleadings. Docket Nos. 6, 8. For the reasons which follow, it is recommended that the Commissioner's decision be affirmed.

## I. Procedural History

On August 22, 1996, Arruda filed an application for supplemental and disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 142-44.[2] That application was denied after the initial determination and following reconsideration. T. 82, 91. Arruda requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Alfred R. Tyminski on August 7, 1997. T. 34. In a decision dated November 18, 1997, the ALJ held that Arruda was not entitled to disability benefits. T. 99. Arruda filed a request for review with the Appeals Council and the case was remanded to the ALJ. T. 126. On March 16, 2000, a second disability hearing was held before ALJ Daniel G. Heely. T. 48. ALJ Heely also found that Arruda was not entitled to disability benefits. T. 22. The Appeals Council denied Arruda's request for review, thus making the ALJ's findings the final decision of the Commissioner. T. 7. This action followed.

## II. Contentions

Arruda contends that the ALJ erred when he failed to properly evaluate the medical opinions of record, assess the severity of his condition, determine his residual functional capacity, procure the testimony of a vocational expert, properly evaluate his credibility, and

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Docket No. 5.

properly utilize the Appendix 2 grid guidelines. The Commissioner contends that there was substantial evidence to support the determination that Arruda was not disabled.

### III. Facts

The facts contained in Arruda's brief are adopted and are not disputed by the Commissioner, except for any inferences or legal conclusions drawn therein. Def. Mem. of Law (Docket No. 8) at 2. Arruda, now forty-eight, previously worked as a custodian and has a ninth-grade education. T. 16, 82. Arruda alleges that he became disabled on April 1, 1993 due to a herniated disc. T. 15.

### IV. Standard of Review

#### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2003). In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (2003).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to

3

evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2003).

The plaintiff has the burden of establishing disability at the first four steps. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform. Id.

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a

4

conclusion.'" Shaw, 221 F.3d at 131 (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (N.D.N.Y. Apr. 8, 1998) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  A court, however, cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive.  Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

## V.  Discussion

### A. Medical Evidence

On June 24, 1996, Arruda complained of pain and numbness in his left leg and was examined by Dr. Rajani.  T. 206.  Dr. Rajani indicated that Arruda walked with a limp and was distressed by his left leg pain.  Id.  He ordered an MRI of Arruda's spine, a chest x-ray, and a CT scan.  Id.  The CT scan and chest x-ray was normal, but the MRI showed a moderate sized central disc herniation at L5-S1.  T. 288-91.  On September 20, 1996, Arruda was examined by Dr. Owen, a neurologist.  T. 221.  Dr. Owen concluded that "[Arruda] will remain totally disabled as he is going to be going to PT [physical therapy] for

5

his neck and left arm pain secondary to his cervical HNP." Id.  A cervical spine x-ray ordered by Dr. Owen was normal.  T. 222.  On October 21, 1996, Dr. Owen again examined Arruda and referred him to a physical therapist.  T. 220.  On December 10, 1996, Arruda began physical therapy at Genesis Health Care.  T. 229.  Arruda attempted to continue the treatment but discontinued physical therapy when the pain from therapy aggravated his symptoms.  T. 232.

On December 9, 1996, Arruda was evaluated by Dr. Donna M. White, a state agency medical consultant, who concluded that Arruda could lift up to ten pounds frequently and twenty pounds occasionally, sit for about six hours in an eight-hour day, stand and walk for about six hours in an eight-hour day, and occasionally perform postural activities.  T. 84-85.  On March 12, 1997, Dr. White's assessment was affirmed by another medical consultant, Dr. Carol A. Wakeley.  T. 90.  Arruda next saw Dr. Dennis Sullivan, a consultative examiner, on February 14, 1997.  T. 223.  Dr. Sullivan concluded that Arruda had a moderate or less impairment and should be considered for vocational rehabilitation training to learn skills that did not require significant exertion.  T. 226.

In February 1997, Arruda was treated by Dr. Garrett Derbyshire at Samaritan Medical Center's Pain Management Center.  T. 240.  Dr. Derbyshire prescribed physical therapy for Arruda, but he was noncompliant.  T. 236, 247.  In an August 15, 1997 letter to Dr. Owen, Dr. Derbyshire detailed Arruda's noncompliance with attending physical therapy and not following up with the home exercise program.  T. 248.  Dr. Derbyshire also noted that efforts to reduce Arruda's pain were not successful and that Arruda complained that his left leg condition had worsened.  Id.  On October 15, 1997, Dr. Owen examined Arruda and

6

noted that he could not demonstrate any serious neurological deficit that would make him push for surgery but would discuss the possibility further after receiving the results of the MRI.  T. 257.  An MRI was taken on October 20, 1997 and showed a mild-sized disc herniation present at L5-S1, which was a slight increase from the previous MRI.  T. 260.

On January 14, 1998, Arruda was seen again by Dr. Rajani and complained of pain and sudden numbness on his left side.  T. 270.  Dr. Rajani gave Arruda Voltaren and Tylenol #3 to help reduce his pain.  Id.  Arruda returned to Dr. Owen for a checkup on September 18, 1998.  T. 258.  Dr. Owen noted that he could not discern any weakness in Arruda's upper extremities, but he concluded that Arruda's symptoms were consistent with both lumbar and cervical spine radiculopathy.  Id.  An MRI was performed on September 29, 1998 and showed a small central disc bulge at C2-3 without spinal or foraminal encroachment.  T. 262.  A different MRI from the same day showed that the central disc herniation was slightly eccentric to the left at L5-S1, which was smaller than the previous two studies on July 11, 1998 and October 20, 1997.  T. 263.  In October 1998, Arruda attended several physical therapy appointments but ceased treatment after informing his physical therapist that the therapy was aggravating his symptoms.  T. 322.

On December 7, 1998, Dr. Owen reported to the Department of Social Services that Arruda "is not a surgical candidate for lumbar or cervical spine surgery and is to follow up with his medical doctor."  T. 259.  Dr. Owen also noted that Arruda continued to be totally disabled.  Id.  On January 15, 1999, Dr. Rajani examined Arruda and observed that he has a full range of neck movements but holds his muscles in spasm on the left side.  T. 277.  Dr. Rajani also noted that Arruda was able to walk well and, because of this, wanted him to

7

begin physical therapy again.  Id.  Arruda resumed physical therapy and attended several sessions in January and February, 1999.  T. 323-29.  On June 9, 1999, Dr. Rajani met with Arruda and informed him that he had nothing else to offer him for his pain except for pain pills.  T. 282.  Arruda then underwent a "fitness for duty" evaluation for Jefferson County on October 7, 1999.  T. 253-254.  Dr. Charles Moehs, the examining physician, concluded that Arruda was "unable to work for either sedentary or more active type work" and that surgery to the neck area might be beneficial.  T. 254.  On October 13, 1999, Arruda was examined by Dr. Coung Bui, who concluded that surgical intervention was not possible and recommended that he continue physical therapy.  T. 337.

### B. Treating Physician's Rule

Arruda contends that the ALJ erred when he discredited the opinion of Dr. Owen, his treating physician, failed to mention or assign weight to the opinion of Dr. Moehs, and did not accord any weight to the opinion of the disability review team. The Commissioner contends that the ALJ properly concluded that these opinions were not entitled to controlling weight.

When evaluating a claim seeking disability benefits, factors to be considered include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant.  Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991).  Generally, more weight is given to a treating source.  Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with

8

other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2003); Shaw, 221 F.3d at 134.  Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons."  Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors."  Schaal, 134 F.3d at 503.  If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given.  Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999).  Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner.  Id. at 133-34; see 20 C.F.R. §§ 404.1527(e), 416.927(e) (2003).

**1. Dr. Owen**

Dr. Owen, a neurologist, began treating Arruda in September 1996 and continued to treat him until December 1998.  On September 20, 1996, Dr. Owen completed a disability certificate for Arruda and stated that Arruda "will remain totally disabled as he is going to be going to PT for his neck and left arm pain secondary to his cervical HNP."  T. 221.  Over the next two years, Arruda visited Dr. Owen two more times.  T. 257-58.[3]  On December 7,

---

[3] Arruda claims that Dr. Owen treated him "multiple times over the course of 1996 through 1998."  Pl. Mem of Law (Docket No. 6) at 15.  However, the medical records only indicate two visits by Arruda after his initial exam in September 1996.  See T. 257-58.

9

1998, Dr. Owen completed an attending physician statement for the Department of Social Services which indicated that Arruda was still disabled.  T. 259.

The ALJ failed to accord any significant weight to Dr. Owen's assessment because he concluded that it was based on a single examination and "intended to be temporary."  T. 20.  In his decision, the ALJ supported his conclusion by citing Dr. Owen's failure to complete a detailed report of Arruda's functional abilities, which is required under Social Security regulations.  Id.[4]  The ALJ also cited Dr. Owen's lack of substantial followup treatment notes to support his conclusion.  Further, Dr. Owen's conclusion was contradicted by Dr. Sullivan, who found that Arruda's impairments were moderate or less and that Arruda should be considered for vocational rehabilitation training.

As discussed above, a treating physician's opinion is given substantial weight if it is supported by medical evidence.  Here, the record does not contain significant medical evidence supporting Dr. Owen's opinion and does contain significant evidence opposing that opinion.  There was, therefore, substantial evidence in the record supporting the ALJ's assessment of Dr. Owen's opinion.  Accordingly, it is recommended that the Commissioner's finding in this regard be affirmed.

### 2. Disability Review Team

Arruda contends that the ALJ erred by not according any weight to the disability review team's conclusion that he was disabled and by failing to mention and assign weight

---

[4] On February 1, 2000, Arruda's counsel wrote to Dr. Owen requesting that he complete a physical assessment form on behalf of Arruda.  T. 200.  Dr. Owen replied that he would not complete the form.  Id.

to Dr. Moehs' opinion.

The ALJ failed to accord any weight to the disability review team's opinion because it was obtained in an effort to determine Arruda's eligibility for public assistance and whether he could participate in a workfare program. T. 20. Although the assessment relied on the Social Security Regulations, the ALJ found that it did not follow the sequential evaluation required, failed to contain a detailed residual functional capacity assessment, and was unclear as to what medical evidence was relied upon in reaching the conclusion. T. 20. Arruda claims that the ALJ's reasons for not according any weight were improper because the regulations state that the opinions of public welfare agency personnel may be used to show impairment severity. See 20 C.F.R. § 404.1513(d)(3) (2003). However, the regulations do not state that evidence from public welfare agencies must be weighed when deciding disability, only that it may be weighed. Here, the ALJ gave a reasoned explanation that is supported by substantial evidence as to why he did not accord any weight to the disability review team's assessment.

In a "fitness for duty" evaluation prepared for Jefferson County Disability, Dr. Moehs concluded that Arruda "is unable to work for either sedentary or more active type work." T. 254. However, Dr. Moehs failed to follow the sequential evaluation that is required by the regulations when determining disability. Further, as the ALJ stated, it is unclear what medical evidence was relied upon by Dr. Moehs in reaching his conclusion. Thus, there is substantial evidence to support the ALJ's decision not to assign any weight to this opinion.

Therefore, it is recommended that the Commissioner's finding in this regard be affirmed.

### C. Subjective Complaints of Pain

Arruda contends that the ALJ's decision to discredit his subjective complaints of pain was in error. The Commissioner contends that the ALJ properly considered Arruda's symptoms.

The basis for establishing disability includes subjective complaints of pain even where the pain is unsupported by clinical or medical findings, provided that the underlying impairment can be "medically ascertained." 20 C.F.R. § 404.1529 (2003); see Snell, 177 F.3d at 135.  A finding that a claimant suffers from disabling pain requires medical evidence of a condition that could reasonably produce pain.  An ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be expected to be consistent with the medical and other evidence.  20 C.F.R. § 404.1529 (2003); Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  Pain is a subjective concept  "difficult to prove, yet equally difficult to disprove" and courts should be reluctant to constrain the Commissioner's ability to evaluate pain.  Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).  If there is a rejection of the claims of disabling pain, the ALJ must provide specific reasons for doing so.  Saviano v. Chater, 956 F. Supp. 1061, 1071 (E.D.N.Y. 1997).

The claimant's credibility and motivation, as well as the medical evidence of impairment, are used to evaluate the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment.  See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1978); Lewis v. Apfel, 62 F. Supp. 2d 648, 653 (N.D.N.Y. 1999).  If there is conflicting evidence about a claimant's pain where the degree of pain complained of is not consistent with the impairment, the ALJ must make credibility

findings. Donato v. Sec'y of HHS, 721 F.2d 414, 418-19 (2d Cir. 1983). The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> (i) [The claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2003).

Here, the ALJ concluded that Arruda's allegations of neck and low back pain were not substantiated by the objective medical evidence. T. 19. The ALJ found it significant that Arruda failed to attend the physical therapy sessions prescribed by his doctors. Id. Arruda repeatedly failed to comply with Dr. Derbyshire's orders to attend the physical therapy sessions and continue his home exercise program. T. 236, 238, 240. In December 1996, Arruda indicated to his physical therapist that he could complete daily activities independently with only slight difficulty with his left shoe/boot laces. Id. Further, Arruda testified that he climbed steps three to four times a day, lives alone, walked to the grocery

13

store around the corner at least once a day, shoveled snow, watched television for five hours a day, and went to the beach. T. 56, 64-67. Thus, there is substantial evidence to support the ALJ's conclusion that Arruda's subjective complaints of pain were not credible.

Therefore, it is recommended that the Commissioner's determination on this ground be affirmed.

### D. Severity

Arruda contends that the ALJ failed properly to assess the severity of his conditions. The Commissioner contends that the ALJ properly evaluated the severity of Arruda's impairments.

As mentioned above, step two of the sequential evaluation process requires a determination as to whether the claimant has a severe impairment which significantly limits the physical or mental ability to do basic work activities. See subsection IV(A) supra. The ability to do basic work activities is defined as "the abilities and activities necessary to do most jobs." 20 C.F.R. § 404.1521(b) (2003). Basic work activities which are relevant for evaluating the severity of a physical impairment include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. 20 C.F.R. §§ 404.1521(b) (2003); see Pickering v. Chater, 951 F. Supp. 418, 424 (S.D.N.Y.1996).

An impairment is severe if it causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). Age, education, and work experience are not evaluated in determining if the impairment or combination of impairments are severe. 20 C.F.R. § 416.920(c) (2003). The severity analysis does no more than "screen out de minimis claims." Dixon v. Shalala,

14

54 F.3d 1019, 1030 (2d Cir. 1995).  If the disability claim rises above the de minimis level, then further analysis is warranted.  Id.  Where a claimant alleges multiple impairments, the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity.  The next inquiry is whether a claimant retained the residual functional capacity to perform his or her past work.  This inquiry must consider the combined effect of any impairments, whether or not they are severe, through the remaining steps.  20 C.F.R. § 404.1523 (2003); Dixon, 54 F.3d at 1031.

The ALJ found that Arruda's impairments, degenerative disc disease of the cervical and lumbar spine, and a herniated disc at L5-S1, were severe within the meaning of the regulations.  T. 18.  However, the ALJ concluded that they were not severe enough to meet or medically equal one of the listed impairments.  Id.  Arruda contends that the ALJ failed to recognize the severity of his leg and neck impairments and the pain and paresthesia he experienced on the left side of his body.  However, an "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 1508 (2003).  "A physical . . . impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."  Id.

Here, the medical evidence does not support Arruda's contention that either his leg impairment or pain and paresthesia on the left side of his body qualify as severe impairments.  Further, contrary to Arruda's contention, the ALJ did find that he had a severe neck impairment.  The ALJ concluded that Arruda had a degenerative disc disease of the cervical spine, which was an impairment that relates to the neck.  See DORLAND'S

15

ILLUSTRATED MED. DICTIONARY 303 (28th ed. 1994) (cervical is defined as "pertaining to the neck, or to the neck of any organ or structure"). Thus, there is substantial evidence to support the ALJ's findings regarding the severity of Arruda's impairments.

Accordingly, it is recommended that the Commissioner's findings in this regard be affirmed.

### E. Residual Functional Capacity

Arruda contends that substantial evidence does not support the finding that he has the residual functional capacity ("RFC") to do light work that exists in significant numbers in the national economy. Arruda also contends that the ALJ should have introduced evidence from a vocational expert to provide testimony that sufficient jobs exist in the national economy that Arruda is capable of performing rather than using the Medical Vocational Guidelines ("Grids").

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms. Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999); see 20 C.F.R. §§ 404.1545, 416.945 (2003). "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations." Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted). In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding a claimant's capabilities. Martone, 70 F. Supp. 2d at 150. RFC is then used to determine whether the

16

claimant can perform his or her past relevant work in the national economy. New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see 20 C.F.R. § § 404.1545, 416.960 (2003).

Where, as here, a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing. See Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. § 404.1560(c) (2003). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions in the country." 20 C.F.R. § 404.1566(a) (2003). The ALJ may apply the Grids or consult a vocational expert. See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2 (2003). If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled. Pratts v Chater, 94 F.3d 34, 38-39 (2d Cir. 1996).

The Grids do not provide the exclusive framework for making a disability determination if a claimant suffers from non-exertional impairments that "significantly limit the range of work permitted by exertional limitations." Id. at 39 (quoting Bapp v. Bowen, 802 F.2d 601, 604-05 (2d Cir. 1986) (citation omitted)). Rather, the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform. Bapp, 802 F.2d at 604-05. Work capacity is "significantly diminished" if there is a loss of work capacity that narrows the possible range of work available and deprives the claimant of a meaningful employment opportunity. Id. at 605. Non-exertional impairments include "difficulty performing the manipulative or postural functions of some work such as

17

reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. § 404.1569a(c)(1)(vi) (2003).  The applicability of the grids should be considered on a case-by-case basis.  Bapp, 802 F.2d at 605.  However, the "mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." Id. at 603.

Here, the ALJ found that Arruda was unable to perform his past relevant work but possessed the RFC to perform a limited range of light work.  T. 20-21.  Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b) (2003).

The ALJ used the Grids as a framework to determine that other work existed in the national economy that Arruda could perform.  The ALJ concluded that Arruda "could lift and carry up to twenty pounds occasionally and ten pounds frequently, stand and walk for six hours in an eight-hour work day, sit for 6 hours in an eight-hour work day, and can occasionally climb, balance, stoop, kneel, crouch and crawl." T. 20.  However, Dr. Moehs concluded that Arruda "was unable to work for either sedentary or more active type work" and Dr. Rajani stated that Arruda "can not sit still." T. 254, 277.  Arruda claims that the ALJ's failure to credit the conclusions of these physicians is clear error.

The regulations permit the ALJ to rely on the opinions of nonexaming sources to override treating sources' opinions as long as they are supported by medical evidence in

the record. See 20 C.F.R. §§ 404.1527(f), 416.927(f); see also Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993). Although some evidence exists that Arruda is unable to perform a limited range of light work, there is substantial evidence to support the ALJ's conclusion that Arruda could perform other work in the national economy. Two state agency medical consultants, Drs. Wakeley and White, found that Arruda could lift ten pounds frequently and twenty pounds occasionally, sit, stand, and walk for about six hours in an eight-hour workday, and had unlimited ability to push and pull. T. 84. In making their determination, the medical consultants relied on the clinical findings of Drs. Owen and Rajani to support their conclusions. T. 84-85. Further, the ALJ cites Arruda's own testimony that he watched television for five hours a day and walks to the neighborhood store once a day without any problem. T. 19. Thus, the ALJ's failure to credit the conclusions of Arruda's treating physicians was not in error because there is substantial medical evidence to support the conclusions of the nonexamining medical consultants. Further, because there is substantial evidence to support the ALJ's conclusion regarding Arruda's impairments, the ALJ did not err when he used the Grids to conclude that Arruda was not disabled.

Accordingly, it is recommended that the Commissioner's determination in this regard be affirmed.

### VI. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **AFFIRMED**, Arruda's motion for a finding of disability (Docket No. 6) be **DENIED**, and the

Commissioner's cross-motion (Docket No. 8) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: June 23, 2006
        Albany, New York

_David R. Homer_
United States Magistrate Judge